UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBY JEANNINE LUKESIC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | No. 2:20-cv-00607-AC<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), finding her no longer disabled for the purposes of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f as of October 27, 2015.[1]

////

////

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

For the reasons that follow, the court will GRANT plaintiff's motion for summary judgment, and DENY the Commissioner's cross-motion for summary judgment. The matter will be remanded to the Commissioner for further consideration.

## I. PROCEDURAL BACKGROUND

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on October 31, 2011. AR 372-373, 374-379.[2] In an undated decision, the Commissioner found plaintiff disabled beginning April 4, 2012. AR 265-266, 267-268. On October 30, 2015, the Commissioner determined that plaintiff was no longer disabled as of October 2015. AR 269-272. Plaintiff requested reconsideration of the determination on March 20, 2016. AR 278. A disability officer conducted a telephonic disability hearing on January 23, 2017. AR 300-309. Based on the information obtained from the disability hearing, the Commissioner denied plaintiff's request for review on July 25, 2017. AR 311. Plaintiff requested a de novo hearing before an Administrative Law Judge on March 20, 2017. AR 315. The Commissioner appointed ALJ Carol E. Eckerson to preside over the matter. AR 332-359. ALJ Eckerson conducted the oral hearing on February 7, 2019. AR 191-228. Plaintiff appeared represented by her attorney Robert Campbell. AR 193. Also present were Cheryl Chandler, vocational expert, via telephone, and Ms. Smith, hearing monitor. Id.

ALJ Eckerson issued an unfavorable decision on February 27, 2019. AR 20-39. The Appeals Council denied the request for review on January 18, 2020. AR 5-10. On that date, the ALJ decision became the final decision of the Commissioner. 42 U.S.C. § 405(h). This timely civil action followed. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF No. 14. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 13 (plaintiff's summary judgment motion), 15 (Commissioner's summary judgment motion, 16 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1962 and was borderline age between "younger person" and "person

---

[2] The AR is electronically filed at ECF No. 11 (AR 1 to AR 925).

closely approaching advanced age" under the regulations at the time she filed her application. AR 236-37; see 20 C.F.R §§ 404.1563(c) and (d), 416.963(c) and (d) (same).  Plaintiff has a high school education, and can communicate in English.  AR 256.  Plaintiff has work history as a store clerk, dishwasher, veterinary assistant, and in-home care nurses aid.  AR 245-46.

### III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn

v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

>Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

>Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

>1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated April 4, 2012. This is known as the "comparison point decision" or CPD.
>
>2. At the time of the CPD, the claimant had the following medically determinable impairment: lung cancer. This impairment was found to result in the residual functional capacity to perform sedentary work activity, with additional limitations.
>
>3. [Step 1] Through the date of this decision, the claimant has not engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).
>
>4. [Step 2] The medical evidence establishes that, since October 27, 2015, the claimant has had the following medically determinable impairments: lung cancer, non-small cell carcinoma, left lower lobectomy, and right upper lobectomy. These are the claimant's current impairments.
>
>5. [Step 3] Since October 27, 2015, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
>6. Medical improvement occurred on October 27, 2015 (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

  7. [Preparation for Step 4] Since October 27, 2015, the impairment present at the time of the CPD had decreased in medical severity to the point where the claimant has had the residual functional capacity to perform light work activity.

  8. [Preparation for Step 4] The claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii) and 416.994(b )(2)(iv)(B) ).

  9. [Preparation for Step 4] Since October 27, 2015, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(1)(6) and 416.994(b)(5)(v)).

  10. [Preparation for Step 4] Since October 27, 2015, based on the current impairments, the claimant has had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

  11. [Step 4] Since October 27, 2015, the claimant has been capable of performing past relevant work as a cashier checker. This work has not required the performance of work-related activities precluded by the claimant's residual functional capacity based on the impairments present since October 27, 2015 (20 CFR 404.1565 and 416.965).

  12. The claimant's disability ended on October 27, 2015, and the claimant has not become disabled again since that date (20 CFR 404.1594(1)(7) and 416.994(b)(5)(vi)).

AR 25-34.

  As noted, the ALJ concluded that plaintiff was not disabled beginning October 27, 2015 through the date of the decision under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 22.

## VI. ANALYSIS

  Plaintiff alleges that (1) new and material evidence presented to the appeals counsel warrants remand of this case to the ALJ; (2) the ALJ erred by improperly discounting a treating physician's opinion; and (3) the ALJ erred by improperly discounting plaintiff's subjective testimony. ECF No. 13. Because the court agrees with plaintiff as to the first argument and finds that this issue subsumes the second argument, only the first and third arguments are discussed below.

////

A. <u>New Evidence Submitted to the Appeals Counsel Warrants Remand</u>

When a claimant submits evidence to the Appeals Council that an ALJ did not consider, and the Appeals Council considers that evidence in deciding whether to review the ALJ's decision, the Appeals Council ordinarily includes that evidence in the administrative record. <u>See</u> 20 C.F.R. § 404.970(a)(5). On judicial review, a court considers the new evidence in determining whether substantial evidence continues to support the ALJ's findings and decision. <u>See</u> <u>Brewes v. Comm'r of SSA</u>, 682 F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence"). The question before the court is whether, in light of the newly submitted evidence, the ALJ's decision remains supported by substantial evidence; whether it is still the case that "a reasonable mind" would find there is enough evidence to support the ALJ's decision even if the additional evidence had been considered. <u>See</u>, <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 115 (2019).

The additional evidence at issue here includes treatment records from plaintiff's treating cardiologist, Dr. Walter Fletscher. AR 49-74. In her decision, the ALJ addressed Dr. Fletscher's medical opinion based on the evidence she had before her. AR 31. The ALJ summarized the evidence related to Dr. Fletscher as follows:

> In June 2017, Walter Fletcher [*sic*.], M.D., completed a treating source statement. Dr. Fletcher noted the claimant's diagnosis of COPD, hypertension, lung cancer, and carotid disease. Dr. Fletcher noted the claimant's prognosis was fair. Dr. Fletcher noted the claimant should rest, status post lung cancer. Dr. Fletcher noted the claimant's medication might cause dizziness or nausea. He found the claimant was capable of even low stress work. He reported the claimant had fatigue and shortness of breath, status post chemotherapy and radiation. He found that emotional factors contributed to the severity of the claimant's symptoms and limitations. He found the claimant's impairments would be expected to last at least 12 months. The claimant could walk for 1 to 2 blocks without rest or severe pain. The claimant could sit for approximately 4 hours. The claimant could stand and walk for approximately 2 hours in an 8-hour workday. Dr. Fletcher opined the claimant could not work. The claimant could lift and carry less than 10 pounds occasionally and 10 pounds occasionally. The claimant could rarely stoop or bend. The claimant could never twist, crouch, squat and climb stairs and ladders. Dr. Fletcher found the claimant should

> avoid concentrated exposure to extreme cold. The claimant should avoid all exposure to extreme heat, high humidity, wetness, cigarette smoke, perfumes, solvents, fumes, odors, gases, and dust. The claimant would likely be absent more than four days per month, because of her impairment or treatment. Dr. Fletcher opined the claimant was disabled from working.  He noted the claimant experiences dizziness and fatigue (19F).

AR 31.  The ALJ noted Dr. Fletscher's opinion that the plaintiff was disabled from working.  AR 32.  However, she found that "Dr. Fletcher reported overly restrictive assessments, given the minimal evidence of treatment and decreased symptom severity.  There is no updated evidence of recurrence of lung cancer or imaging studies supportive of the severity alleged."  Id.  The ALJ gave Dr. Fletscher's opinion little weight, finding it was "conclusory and not supported by the objective evidence."  AR 33.

Dr. Fletscher's medical records submitted on appeal include multiple echocardiogram reports confirming that plaintiff suffers from mitral regurgitation and tricuspid regurgitation.  See AR 49-50, 54, 55.  The most recent echocardiogram report from January 2018 showed normal left ventricle size with inferior base hypokinesis with good overall contractility and systolic function, with septal movement toward left ventricle; mild concentric left ventricular hypertrophy, normal aortic root size with mild sclerosis without aortic stenosis with trace aortic insufficiency.  AR 54-55.  Borderline left atrial enlargement with very mild mitral regurgitation with mild mitral annular calcification and borderline mitral valve prolapse; and mild to moderate right atrial and right ventricle enlargement with borderline tricuspid valve prolapse with mild to moderate tricuspid regurgitation and some pulmonic insufficiency with fair right ventricular ejection fraction with right ventricular hypertrophy and pulmonary hypertension (estimated).  AR 54.

The evidence submitted on appeal also includes a pulmonary function report from April 2017, which showed a moderately severe obstructive airway.  AR 58. When compared to a study from April 15, 2014, the vital capacities and total lung capacity remain normal; however, the new report finds there has been a worsening in the FEV1, FEV1 to FVC ratio.  AR 58.  In the 2014 study, there was significant improvement in this area after albuterol inhalation, which is "not the case on the present study."  AR 58.  Airway resistance has increased since the April 2014 study.  There has been very slight improvement in the diffusing capacity for carbon monoxide.  AR 58.

There is no dispute that the ALJ does not appear to have possessed Dr. Fletscher's treatment records, the echocardiogram report, or the pulmonary function report; the ALJ does not discuss the evidence in the decision, nor is the evidence exhibited by the ALJ.  The Commissioner asserts that this is because plaintiff "failed to produce them, despite being represented by an attorney at the hearing (AR 23, 194, 316)." ECF No.  ECF No. 15 at 11.  While this may be true, there is a letter in the record from plaintiff to the Commissioner stating she feels her counsel at the ALJ hearing level did not even try "to prove my case or defend me."  AR 14.  She goes on to state "I am going to appeal on my own and produce to the appeals council all my medical records plus all updates that I feel [my counsel] should have done with the [ALJ] appeal I just lost."  Id.  Considering this letter, and because the Commissioner makes no argument court is required to do otherwise, plaintiff's failure to produce the records at an earlier date will not be held against her.

Upon review of the record the court finds the submission of the additional evidence warrants remand; the ALJ must have an opportunity to consider the entire record.  The additional records from Dr. Fletscher are clearly relevant to the ALJ's evaluation of Dr. Fletscher's medical opinion.  The Commissioner argues that the new records do not alter the fact that other treatment notes from other medical providers showed normal findings, and these records continue to support the ALJ's conclusion notwithstanding the test results from Dr. Fletscher submitted after the ALJ's decision. ECF No. 15 at 11, citing AR 747, 700, 898, 742, 818, 829 (doing well), 701, 744, 820, 813, 835, 831 (normal findings on examination)).  The undersigned disagrees.  The ALJ specifically discounted Dr. Fletscher's opinion on the basis that his opinion was not supported by "objective evidence."  AR 33.  Objective evidence specifically from Dr. Fletscher submitted on appeal goes directly to the continuing validity of this conclusion.  It is the ALJ's province to weigh these opinions in the first instance and determine their impact on disability.  The undersigned declines to make the decision for the ALJ that the newly submitted test results are inconsequential to her earlier determination that insufficient objective evidence supported Dr. Fletscher's opinion.  The case must be remanded so the ALJ can properly consider the relevant evidence.

B. Subjective Testimony

Plaintiff alleges that the ALJ erred by improperly discounting her subjective testimony. The undersigned agrees. The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).

"The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina, 674 F.3d at 1112 (citation omitted). "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

In weighing a claimant's credibility, an ALJ may consider, among other things, inconsistencies either in the claimant's testimony or between his testimony and his conduct, claimant's daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."

Id. at 959. However, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

Here, plaintiff testified that she has a history of lung cancer. AR 211. She underwent a lobectomy in her left lower lung in September 2010 and had surgery to remove cancer from the upper right lung in November 2012. Id. Her surgeries have been successful and there is currently no evidence of lung cancer. AR 212. Plaintiff testified she cannot work because she continues to experience shortness of breath, which she attributes to insufficient blood flow. AR 212-213. She also stated she suffers back pain which makes it difficult for her to sit for long periods. AR 222. She experiences shortness of breath every day for at least one half to three-quarters of the day. AR 213. Plaintiff last went to the emergency room in September 2018 with a coughing fit. AR 214-215. She uses inhalers daily, which do not provide complete relief. AR 213.

Plaintiff used nebulizers until about six months prior to the hearing. AR 213-214. She stopped using a nebulizer because she did not think it helped and her pulmonary provider told her that the albuterol was not helping her lungs. AR 214. However, when she does not use the nebulizer, her breathing "gets shorter" and she gets dizzy, which sends her into a panic. Id. She becomes agitated and starts shaking, a situation that may last "a couple of hours." Id. She tries to stay calm and use her inhalers to get her breathing under control. Id. Plaintiff testified to heart issues that began in 2017. AR 220. Her heart races when she engages in physical activity. AR 221. She experiences increased heart rate when she lays down at night. AR 220. Plaintiff stated she suffers neck pain daily, which she has suffered since before her lung cancer. AR 215. She suffers from anxiety and low back pain. AR 212. Plaintiff takes Tizanidine and Tylenol 3 (Tylenol + Codeine) for pain. AR 215. She estimated she can walk for about two blocks then needs to sit down and rest for about thirty minutes. AR 216. After resting, she can get up and walk again. Id. She can walk about one mile throughout the day. Id.

Plaintiff has guardianship of her three-year-old grandchild; she gained custody when the child was born. AR 199. Her son, the child's father, has visitation rights, but lives in Oregon and has a history of incarceration. Id. Plaintiff can bathe, dress, and change her granddaughter, but

she stopped picking her up when she weighed about 18 pounds. AR 217. Plaintiff testified she can engage in housecleaning, but only one room in a day. AR 218. She may take six hours to finish cleaning the room because she stops to sit and rest. Id. Her home is 800 square feet. AR 219. When she vacuums, she takes breaks to rest; she may vacuum for about 15 minutes before needing to rest for thirty minutes. Id.

The ALJ found "the claimant's current medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." AR 31. First, the ALJ reviewed medical evidence and found that "the medical evidence does not support the severity alleged by the claimant. Instead, the evidence shows the minimal treatment and mild findings." To support this conclusion, the ALJ noted that plaintiff treats her chronic pain with "over-the-counter Tylenol" and that plaintiff's oncologist has not recommended follow up treatments.

The medical evidence cited by the ALJ does not clearly contradict plaintiff's testimony and is recited somewhat inaccurately. First, the record reflects that plaintiff is not treating her pain with regular over-the-counter Tylenol, but Tylenol 3, which contains the narcotic Codeine. AR 215. In any case, plaintiff is not required to "produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Smolen, 80 F.3d at 1282). The ALJ's reliance on the lack of objective evidence is further undermined by the fact that she did not possess all relevant records, as discussed above. The medical record cited by the ALJ does not support the conclusion that the record contradicts plaintiff's testimony, and as such, conflict with the medical record was not an appropriate reason to discount plaintiff's statements.

As a secondary reason for discounting plaintiff's testimony, the ALJ briefly references plaintiff's "varied daily living activities," without providing any specifics. AR 33. The Ninth

1 Circuit has held that "if a claimant 'is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (alteration in original) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). "One does not need to be 'utterly incapacitated' in order to be disabled." Id. (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ) (finding that activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain as a claimant may do these activities despite pain for therapeutic reasons). "Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," and "[o]nly if the level of activity were inconsistent with [the claimant's] claimed limitations would these activities have any bearing on [her] credibility." Reddick, 157 F.3d at 722.

Here, the ALJ does not cite any particular activities that contradict plaintiff's claimed limitations. Even if she had, plaintiff's very minimal daily activities (basic childcare without lifting, basic housekeeping with breaks) do not demonstrate that a "substantial part" of her day is spent engaging in activities "transferable to a work setting." Vertigan, 260 F.3d 1050. Thus, the ALJ did not provide clear and convincing reasons for discrediting plaintiff's subjective testimony.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is DENIED;

3. The matter is REMANDED to the Commissioner for further proceedings; and

4. The Clerk of the Court shall enter judgment for plaintiff and close this case.

DATED: March 22, 2021

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE